UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| TAMMY L. LAWRENCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-cv-4074-JBM |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is now before the Court on Plaintiff's Motion for Summary Judgment (Doc. 7) and Defendant's Motion for Summary Affirmance (Doc. 10). For the reasons set forth below, Plaintiff's Motion for Summary Judgment (Doc. 7) is GRANTED and Defendant's Motion for Summary Affirmance (Doc. 10) is DENIED.

### BACKGROUND

Plaintiff, Tammy L. Lawrence, filed for Disability Insurance Benefits (DIB) on December 20, 2002. She alleged a disability onset date of May 1, 2001 (R. at 37), and alleged disability due to endometriosis[1] and adenomyosis[2] (R. at 87).

---

[1] Endometriosis is a condition in which tissue resembling the uterine mucous membrane occurs aberrantly in various locations in the pelvic cavity. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 554 (27th ed. 1988).

[2] Adenomyosis is a benign condition characterized by ingrowth of the uterine mucous membrane into the uterine musculature, sometimes associated with an overgrowth of the uterine

Lawrence later filed a Reconsideration Disability Report alleging fibromyalgia[3] as an additional illness. (R. at 111.)

The record reveals the following regarding Lawrence's medical condition: In May 2001, Lawrence was treated for bronchitis. (R. at 287.) She reported pelvic pain in November 2001, but a pelvic sonogram and examination did not reveal any abnormality. (R. at 321-23, 343-44.) Lawrence reported pelvic symptoms, fatigue, sleeplessness, joint achiness, memory loss, and other symptoms for the next several months. (R. at 296, 340-341.) In March 2002, Lawrence had a hysterectomy to attempt to relieve her symptoms. (R. at 309.)

In September 2002, Lawrence complained of recurrent headaches, lower back pain, and an irregular menstrual cycle. (R. at 292-93.) Under the advice of her gynecologist, Lawrence was evaluated for fibromyalgia by Dr. Paul McLoone. (Id.) Dr. McLoone's impression was that the pain was musculoskeletal, and Lawrence did not appear to have fibromyalgia. (Id.) In November

---

musculature. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 28 (27th ed. 1988).

[3] Fibromyalgia, also known as fibrositis, is "inflammatory hyperplasia of the white fibrous tissue of the body, especially of the muscle sheaths." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 630 (27th ed. 1988). Its causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. Its principal symptoms are "pain all over", fatigue, disturbed sleep, stiffness, and multiple tender spots in 18 fixed locations on the body. See Frederick Wolfe et. al., The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee, 33 Arthritis and Rheumatism 160 (1990).

2002, Lawrence complained to Dr. McLoone of upper back pain. (R. at 290.) Dr. McLoone again diagnosed the pain as musculoskeletal rather than fibromyalgia. (R. at 280.) In January 2003, Lawrence complained to Dr. McLoone of lower back pain, sleep difficulty, irritability, fatigue, diffuse body aches, and trouble with memory and concentration. Dr. McLoone indicated a possible diagnosis of chronic fatigue syndrome, but that she "probably does not meet all the diagnostic criteria for fibromyalgia." (R. at 286.) In February 2003, Lawrence reported to Dr. McLoone that her symptoms were increasing. (R. at 253.) At that time, Dr. McLoone diagnosed Lawrence with fibromyalgia and insomnia. (Id.)

In February 2003, a state agency physician, Dr. Barry Free, reviewed Lawrence's claim folder and completed a Residual Functional Capacity ("RFC") form. (R. at 260-267.) Dr. Free did not mention fibromyalgia in the form. He noted that Lawrence's claims were disproportionate to the expected severity of her impairments. (R. at 265.) He determined that Lawrence was able to perform most activities necessary for light work with only limited climbing, balancing, stooping, kneeling, crouching, or crawling. (R. at 267.)

In June 2003, Lawrence received a consultative psychological examination by psychologist Joel Eckert at the request of the Disability Determination Services ("DDS"). (R.

3

at 234-241.) Dr. Eckert concluded that Lawrence suffered from depression and anxiety stemming from her multiple medical conditions. (R. at 239.)

In August 2003, a DDS psychologist, Kirk Boyenga, Ph.D., completed a Psychiatric Review Technique form for Lawrence. (R. at 220-30.) Dr. Boyenga diagnosed Lawrence with non-severe Affective Disorders and he indicated that Lawrence has mild limitations in daily activities, as well as mild limitations in maintaining social function, concentration, persistence, and pace. (R. at 228.)

In September 2003, Franlynn Bugg, Ph.D., performed a neuropsychological evaluation of Lawrence. Dr. Bugg opined that there was evidence of cognitive dysfunction. (R. at 283-284.)

Lawrence was also examined by Dr. Michael Miniter, a rheumatologist, in September 2003 and he reached a different conclusion regarding the severity of Lawrence's fibromyalgia. (R. at 276-77.) Dr. Minter noted problems with concentration, memory, joint pain, general aching, stiffness, and sleep difficulty. He concluded that Lawrence "clearly has fibromyalgia." (R. at 277). In April 2004, Dr. Miniter completed a Fibromyalgia RFC questionnaire on Lawrence. (R. at 348.) He concluded that Lawrence met the criteria for fibromyalgia. (Id.) Dr. Miniter also opined that Lawrence has functional limitations and is limited to standing thirty minutes

4

at a time, sitting less than two hours in an eight hour work day, and must walk around for approximately ten minutes every fifteen minutes. (Id.) In addition, Lawrence would need to alternate standing and sitting, elevate her feet while working, and take ten minute unscheduled breaks every hour. (Id.) Lawrence could occasionally lift ten pounds, twist, and stoop. (Id.) She could rarely crouch, climb ladders, or climb stairs. (Id.) Finally, Lawrence would likely be absent from work at least four days a month due to her impairments. (R. 348.)

Lawrence was examined by Dr. McLoone again in April 2004. Dr. McLoone found trigger points, or symptoms of fibromyalgia, at Lawrence's upper back, upper chest, left medial elbow, and right medial knee. (R. at 345.) Dr. McLoone's impression was that Lawrence was suffering from fibromyalgia. (Id.)

At the May 7, 2004 administrative hearing, Lawrence testified to the following: She possessed a high school diploma, an associate's degree in accounting, and an associate's degree in business management. (R. at 358.) She identified her past relevant work as a service agent for a leasing company and a library assistant. (R. at 359.) She was unable to work full time due to a lack of energy, trouble sitting in one position, comprehension and memory problems, and pain upon sitting in one position for too long. (R. at 364.) She testified she had experienced the symptoms beginning around June 2002 and

5

experienced significant pain and bleeding due to adenomyosis prior to that. (R. at 360.)

Lawrence testified to taking Cyclobenzaprine,[4] Lorazepam,[5] and Trazodone[6] by prescription in an attempt to control her symptoms. (R. at 361.) However, she stated that she suffered side effects from the medications including confusion and "elevated liver enzymes." (R. at 362.)

With regards to daily activities, Lawrence stated that she fixed simple meals, cared for pets, went to the library, wandered around the house, watched television, and attempted housework. (R. at 365.) She also testified that she elevated her legs on a footstool when sitting for a prolonged period, sat no more than an hour at a time, tried to walk three to four blocks every other day, and tried to dance when she did the dishes. (R. at 369.)

Brian Paprocki, a vocational expert, also testified at Lawrence's administrative hearing. The ALJ presented Paprocki with a hypothetical of an individual with Lawrence's vocational characteristics and the ability to perform light exertion, with

---

[4] Cyclobenzaprine is a muscle relaxant. STEDMAN'S MEDICAL DICTIONARY (27 ed. 2000).

[5] Lorazepam is an antianxiety drug. STEDMAN'S MEDICAL DICTIONARY (27 ed. 2000).

[6] Trazodone is a medication that can help women with fibromyalgia fall asleep. Jones, Kim, Fibromyalgia Update 02/25/03, www.webmd.com (last visited August 29, 2006).

mild limitations in daily activities, social function, concentration, persistence, and pace. (R. at 372.) Paprocki testified that the hypothetical individual could work as a service agent and car jockey. (Id.)

On cross examination, Paprocki was presented with a hypothetical based upon Dr. Miniter's April 2004 RFC questionnaire. This hypothetical individual had disabilities which limited him to walking a maximum of four to five blocks and standing a maximum of thirty minutes. This person also required alternately sitting and standing, unscheduled breaks, elevating legs at work, and missing more than four day of work per month. Paprocki indicated that these restrictions would preclude such a person from any employment. (R. at 373-374.)

The ALJ found that Lawrence had severe fibromyalgia and depression with cognitive dysfunction, but nevertheless was not entitled to disability benefits. This was because she did not have an impairment or combination of impairments of that level listed in, or medically equal to one listed in, the regulations. (R. at 12.) Specifically, the ALJ found "the alleged 'disabling' severity of Lawrence's subjective complaints was not reasonably related to the objective medical evidence." (Id.) Furthermore, "Lawrence had the RFC to perform light work with only mild mental limitations, and she was not precluded by medically determinable impairments from doing past work." (Id.) Finally,

7

the ALJ found Lawrence was not under a "disability", as defined in the Social Security Act, at any time through the date of his decision.  (Id.)

Lawrence appealed the ALJ's decision and the Appeals Council denied her request for review.  (R. at 1C.)  Thereafter, Lawrence filed this action for review of the ALJ's decision denying Lawrence's benefits.  Lawrence has moved for summary judgment and the Commissioner has moved for summary affirmance.

## LEGAL STANDARD

To be entitled to disability insurance benefits under the Social Security Act, a claimant must prove that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. 423(d)(1)(A). To determine if the claimant is unable to engage in any substantial gainful activity, the Commissioner of Social Security engages in a factual determination.  See  McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980).  That factual determination is made by using a five-step sequential analysis.  See 20 C.F.R. §§ 404.1520; Maggard v. Apfel, 167 F.3d 376 (7th Cir. 1999).

In the first step a threshold determination is made to decide whether the claimant is presently involved in a

substantially gainful activity. 20 C.F.R. § 416.920(b). If the claimant is not under such employment then the Commissioner of Social Security proceeds to the next step. Id. Under the second step, the Commissioner evaluates the severity and duration of the impairment. 20 C.F.R. § 416.920(c). If the claimant has an impairment that significantly limits their physical or mental ability to do basic work activities then the Commissioner will proceed to the next step. Id. Under the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work, and if the elements on the list are met or exceeded, declares the claimant eligible for benefits. 20 C.F.R. § 416.920(d). If the claimant does not qualify under on of the listed impairments, the Commissioner proceeds to the fourth and fifth steps. In the forth step, the claimant's RFC is evaluated to determine whether the claimant can pursue her past work. 20 C.F.R. 416.920(e). If she cannot, then the Commissioner evaluates the claimant's ability to perform other work available in the economy. Id.

 The plaintiff has the burdens of production and persuasion on steps one through four.  However, once the plaintiff shows an inability to perform her past work, the burden shifts to the Commissioner to show an ability to engage in some other type of substantial gainful employment.  See Tom v. Heckler, 779 F.2d

9

1250, 1253 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir. 1984).

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. 405(g) which provides that "[t]he finding of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Maggard, 167 F.3d at 379 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1970)).

A court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. See Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989). A court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

Furthermore, in determining whether the ALJ's findings are supported by substantial evidence, credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. See Imani v. Heckler, 797 F.2d 508, 510 (7th Cir.), cert. denied, 479 U.S. 988 (1986).

However, the ALJ must articulate reasons for rejecting or accepting entire lines of evidence. Godbey v. Apfel, 238 F.3d

803, 808 (7th Cir. 2000) (ALJ's failure to adequately address evidence that was contrary to his decision merited reversal); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994) (ALJ erred by failing to discuss evidence regarding claimant's hand dexterity problems). The ALJ is required to "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (quoting Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985)).

## **ANALYSIS**

The issue on review before the Court is whether the ALJ sufficiently articulated his reasons for rejecting or accepting the claimant's evidence. In this case, the ALJ found that Lawrence failed first at the third step of the commissioner's inquiry by not having an impairment equal to one on the list of impairments considered severe enough to preclude any gainful work. Next, the ALJ found that Lawrence failed at the forth step of the inquiry because she was not precluded by medically determinable impairments from doing past relevant work. The question before this court is whether there was any evidence at step four which would have showed that Lawrence could not perform past relevant work, and if so did the ALJ sufficiently articulate his reasons for rejecting that evidence.

Although an ALJ is accorded deference, the Court must look to see if the ALJ has constructed "a bridge from the evidence to his conclusion" when determining whether the decision is supported by substantial evidence. Green v. Apfel, 204 F.3d 780, 781 (7th Cir. 2000). The ALJ is not required to evaluate in writing each and every piece of evidence, but he "must articulate at some minimal level his analysis of the evidence." Ray v. Bowen, 843 F.2d 998, 1002 (7th Cir. 1988). In addition, the ALJ's discussion may not be limited only to evidence favoring his conclusion. Orlando v. Heckler, 776 F.2d 209, 213 (7th Cir. 1985). Thus, the opinion of the ALJ "is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." Stephens v. Heckler, 766 F.2d 284, 288 (7th Cir. 1985).

In the present case, the ALJ fails to discuss or analyze why weight was not given to Dr. Miniter's opinion and the RFC questionnaire, and why he found that Lawrence's testimony lacked credibility.

**I. The ALJ did not Discuss Dr. Miniter's Opinion or RFC**

Under 20 C.F.R § 404.1527(d)(2), a treating physician's opinion regarding a claimant's medical condition is entitled to controlling weight if it is consistent with substantial evidence in the record and supported by the medical findings. Grudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003). If a treating

physician's opinion is internally inconsistent or inconsistent with the opinion of a consulting physician, the ALJ may discount the treating physician's opinion as long as he "minimally articulate[s] his reasons for crediting or rejecting evidence of disability." Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004)(quoting Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000)).

In Clifford, the Seventh Circuit remanded a case for further proceedings when the ALJ did not give controlling weight to the treating physician's report on the grounds that it was inconsistent with claimant's description of her daily activities and unsupported by medical evidence. The treating physician opined that the claimant was severely limited in her ability to perform work requiring standing or walking. Claimant acknowledged that she walks six blocks, shops, and performs household chores. However, the ALJ failed to explain or discuss how the treating physician's opinion was inconsistent with the described daily activities. The court affirmed that the ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability" and failure to do so constitutes error. Id. at 870.

In this case, Dr. Miniter was one of Lawrence's treating physicians.[7] In the record, it is clear that Dr. Miniter has diagnosed Lawrence with Fibromyalgia and opined that Lawrence's impairments are reasonably consistent with her symptoms and functional limitations. (R. at 275, 349.) At Lawrence's hearing, the vocational expert was presented with a hypothetical that reflected Dr. Miniter's opinion in his RFC questionnaire. The vocational expert testified that the restrictions would not be accommodated by *any* employer. (R. at 374, emphasis added.) Thus, Dr. Miniter's medical opinion is in strong support of Lawrence's case and contrary to the ruling of the ALJ.

---

[7] The Court disagrees with Defendant's contention that classification of Dr. Miniter as a 'treating physician' is "generous." (Doc. 12 at 12.) A "treating physician" is defined as "an acceptable medical source who... has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]. . . ." 20 C.F.R. § 404.1502. Furthermore, a treating physician may be "an acceptable medical source who has treated or evaluated [the claimant] only a few times . . . if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition[s]." Id.
    The record indicates that Lawrence was examined by Dr. Miniter in September of 2003 when he prescribed Trazadone. (R. at 277.) Dr. Miniter followed up again with Lawrence in November 2003, where he monitored her condition and increased her prescription to help her sleep and attempt to give her more energy. (R. at 277.) Dr. Miniter also scheduled Lawrence for a re-evaluation four months later. Also, he was monitoring her condition and medication through scheduled re-revaluation appointments where he altered the doses of her medication. Accordingly, it is evident from the record that Dr. Miniter had an ongoing relationship with Lawrence and was treating her with prescription medication. This is consistent with his role as a "treating physician" as outline in 20 C.F.R. § 404.1502.

However, the ALJ's discussion of Dr. Miniter's opinion is limited to acknowledging his RFC questionnaire.  The ALJ simply states:

> "Also in April 2004, Michael F. Miniter, M.D., submitted an assessment describing limitations on lifting over 10 pounds occasionally, with sufficient ability to walk for to five blocks without resting, stand 30 minutes at one time, sit at least six hours per day, and perform occasional twisting and stooping.(R. at 11.)

No other mention of Dr. Miniter or his RFC questionnaire appears in the ALJ's decision.  The ALJ does not discuss or even mention why he chose not to give weight to Dr. Miniter's opinion and why he completely disregarded the evidence of Dr. Miniter's RFC questionnaire.  It could be because it was not credible because it may have been outweighed by other evidence, or because it may not have been based upon accepted medical practices, or because he thought that Dr. Miniter was biased. However, there is no mention in the ALJ's decision stating any reason for rejecting Dr. Miniter's opinion so this Court has no way of evaluating his assessment of the evidence.

This is inconsistent with the Seventh Circuit's holding in <u>Clifford</u> requiring an ALJ to explain his reasoning in discounting the opinion of a treating physician. Here, the treating physician opined that Lawrence was limited in her lifting and performance abilities and would most likely have to miss more than four days of work per month.  This would have

15

precluded Lawrence from obtaining work according to the vocational expert. The ALJ discounted, or did not consider, Dr. Miniter's opinion without minimally articulating reasons for rejecting that evidence. Thus, this Court has no means of performing an informed review of the ALJ's decision to discount Dr. Miniter's opinion. Accordingly, the Court will remand the case to the ALJ so that he may articulate his reasons for rejecting the opinion and RFC questionnaire of Dr. Miniter.

## II. The ALJ did not Adequately Discuss Lawrence's Credibility

The Seventh Circuit has held that Social Security Ruling 96-7p "requires ALJs to articulate the reasons behind credibility evaluations." Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003). The Social Security Ruling states that:

> When evaluating the credibility of an individuals statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individuals statements. . . . It is not sufficient to make a conclusory statement that "the individuals statements have been considered" or that "the allegations are (or are not) credible. . . . the decision . . . must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight. Social Security Ruling 96-7p., 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In Shramek v. Apfel, 226 F.3d 809, 813 (7th Cir. 2000), the Court held that there was not a valid basis for the ALJ to find the claimant lacked credibility. The ALJ determined the claimant was not credible because she testified to doing

16

housework and taking care of children while she alleged she was unable to sit, walk, or stand for long periods without pain. The Seventh Circuit held that the claimant's ability to take care of the house and children was not in contradiction with her functional limitations. Id. at 813. Furthermore, the Court established that "a claimant's ability to perform limited and sporadic tasks does not necessarily mean she is capable of full-time employment." Id.; Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993).

Here, the ALJ states in his decision that "[c]areful consideration has been given, in accordance with 20 C.F.R. 404.1529 and Social Security Ruling 96-7p., to the claimant's subjective complaints and testimony which, as discussed above, are associated with few clinical or other diagnostic abnormalities, and are not fully credible." (R. at 11.)

However, the only reasoning given by the ALJ for discrediting Lawrence's testimony is that she testified that she cares for her daughter, works as part-time cook one day a week, shoveled snow and manure and handles the family finances. This evidence is presented in a way the only supports the ALJ's decision. The evidence was actually that she cares for her daughter, experiences severe pain after working one day a week as a cook at a convenience store (R. at 345), and experienced severe pain after she tried to shovel snow and manure once (R.

17

at 251) and no longer handles the family finances (Doc. 12 at 16; R. at 368).   These activities are limited or sporadic at best, which the Seventh Circuit has already held does not mean a claimant is capable of full time employment.  Shramek, 226 F.3d at 813.

   The ALJ makes no other explanation or reasoning for discrediting Lawrence's testimony.  This perfunctory analysis is prohibited by the same Social Security Ruling 96-7p that ALJ cites.  Social Security Ruling 96-7p expressly states "[i]t is not sufficient to make a conclusory statement that "the individuals statements have been considered" or that "the allegations are (or are not) credible."  Id.

   Because the ALJ has not provided valid reasons for finding that Lawrence's testimony lacked credibility, this Court will remand the case to the ALJ so that he may properly articulate his reasons for rejecting the credibility of Lawrence's testimony.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 7) is GRANTED, and Defendant's Motion for Summary Affirmance is DENIED (Doc. 10).  It is the ORDER of this Court that this matter be REMANDED to the Commissioner of Social Security under the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

ENTERED this   18th   day of September, 2006.

　　　　　　　　　　　　　　　　　　　　  s/ Joe Billy McDade____
　　　　　　　　　　　　　　　　　　　　Joe Billy McDade
　　　　　　　　　　　　　　　　　　United States District Judge